UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JEFFERY SCOTT HARDING, | CASE NO. 5:24-CV-774 |
| Plaintiff, | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

Before the Court is the Report and Recommendation of Magistrate Judge Jennifer Dowdell Armstrong ("R&R") recommending the Commissioner of Social Security's ("Defendant") decision be affirmed. (Doc. 12.) Plaintiff Jeffery Scott Harding ("Plaintiff") timely filed an objection (Doc. 13), and Defendant responded (Doc. 14).

For the reasons below, Plaintiff's objection is OVERRULED, the R&R is ACCEPTED and ADOPTED, and the final decision of the Commissioner is AFFIRMED.

I. **BACKGROUND**

A. **The Record Before the Administrative Law Judge**

Plaintiff stated no objection to either the factual record or procedural history set forth in the R&R. (*See* Doc. 13.) Notwithstanding, the Court summarizes the facts pertinent to evaluating Plaintiff's objection.

Plaintiff alleged a disability because of chronic back and radicular pain which limited his ability to sit, stand, and walk for extended periods. (Doc. 7 at 87-88.)[1] Plaintiff had a seizure in

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

May 2019, which caused him to fall and break five ribs. (*Id.* at 91.) A CT revealed a likely meningioma and mild to moderate small-vessel ischemic changes and parenchymal volume loss. (*Id.* at 328.) On August 9, 2019, Plaintiff consulted with Dr. Venkatesan Ravishankar. (*Id.* at 355.) Plaintiff did not report complaints about pain, but Dr. Ravishankar noted uncontrolled hypertension. (*Id.* at 355-56.) At a follow-up appointment in September 2019, Plaintiff reported no acute distress, normal gait, normal station, and complained of no back pain or muscle weakness. (*Id.* at 310-12.) On October 16, 2019, an MRI revealed no meningioma. (*Id.* at 345.)

During Plaintiff's annual wellness examination with Dr. Ravishankar on November 11, 2019, Dr. Ravishankar noted no abnormal findings. (*Id.* at 353.) Plaintiff reported he was ambulating, shopping, and housekeeping independently. (*Id.*) Plaintiff did not complain of back pain in January or February 2020 during follow-up appointments. (*Id.* at 487, 489.)

In July 2020, Plaintiff consulted with Dr. Ravishankar complaining of lower back pain, among other things. (*Id.* at 351.) Dr. Ravishankar opined Plaintiff likely had disc prolapse and ordered additional testing. (*Id.*) Imaging revealed multilevel degenerative disk disease and facet arthropathy. (*Id.* at 381.)

Plaintiff presented to the emergency room that same month for a possible blood clot. (*Id.* at 368.) Plaintiff complained of swelling in the neck but denied back pain. (*Id.* at 368-69.) The cause of the swelling could not be determined, but a blood clot was ruled out. (*Id.*)

On August 3, 2020, Plaintiff consulted with Dr. Ravishankar at a follow-up appointment. (*Id.* at 406.) Plaintiff did not complain of pain at this appointment. (*Id.*) At another follow-up appointment with Dr. Ravishankar on November 10, 2020, Dr. Ravishankar noted uncontrolled blood pressure. (*Id.* at 398.) Plaintiff also complained of back pain. (*Id.*) Dr. Ravishankar made a medication adjustment. (*Id.*)

After a few follow-up appointments, on April 19, 2021, Plaintiff consulted with Dr. Ravishankar regarding ongoing back pain.  (*Id.* at 393.)  Dr. Ravishankar noted no abnormal gait.  (*Id.*)

On June 5, 2021, Dr. Bilal Mahmood examined Plaintiff for purposes of his disability application.  (*Id.* at 412.)  Plaintiff rated his pain at a seven out of ten and explained he has had that pain since falling in May 2019 from his seizure.  (*Id.*)  Plaintiff reported medication and physical therapy has not helped.  (*Id.*)  When Dr. Mahmood examined Plaintiff, Plaintiff reported tenderness upon palpation of the bilateral paraspinal muscles of lumbosacral junction.  (*Id.* at 413.)  Dr. Mahmood noted mild evidence of paravertebral muscle spasm on the dorsolumbar exam of the paraspinal muscles.  (*Id.*)  Dr. Mahmood also assessed that there were no abnormalities in the cervical, thoracic, or dorsolumbar spine.  (*Id.*)  Plaintiff could walk normally and had full range of motion and normal strength.  (*Id.*)

On July 19, 2021, Plaintiff saw Dr. Ravishankar again.  (*Id.* at 467.)  Plaintiff reported his back pain had not improved.  (*Id.*)  Dr. Ravishankar referred him to an orthopedic practice group.  (*Id.*)  Following that referral, Plaintiff consulted with Hannah Laslo, PA-C.  (*Id.* at 432.) Plaintiff reported pain at a four to seven out of ten, made worse by standing, changing positions, or lying down.  (*Id.*)  Ms. Laslo ordered x-ray imaging and after assessment of the images, recommended Plaintiff conduct further imaging through MRI.  (*Id.* at 434-35.)

In September 2021, Plaintiff underwent MRI imaging.  (*Id.* at 429-30.)  The MRI revealed minimal retrolisthesis at the L5/S1 level, mild circumferential disc bulging with tiny osteophytes at the L2/L3 level, circumferential disc building with small osteophytes at the L3/L4 level with minimal narrowing of the central canal, mild degenerative facet changes and minimal

posterior disc bulging at the L4/L5 level, mild to moderate degenerate facet changes with small broad-based posterior disc osteophyte complex at the L5/S1 level. (*Id.*)

At an appointment with Dr. Douglas Ehrler on September 1, 2021, Dr. Ehrler interpreted the MRI results and noted bilateral foraminal stenosis at the L5/S1 are with no gross motion, defects, or step offs. (*Id.*) Dr. Ehrler noted Plaintiff's physical examination was good and recommended Plaintiff receive an epidural injection. (*Id.* at 439.)

On October 12, 2021, Plaintiff consulted with Dr. Jamesetta Holloway Lewis regarding his pain. (*Id.* at 543.) Plaintiff reported constant back pain for three years and mild to moderate arthritis in the spine based on prior imaging. (*Id.*) Dr. Lewis noted Plaintiff was not using a cane or walker, had normal strength, normal range of motion, but did note diminished lumbar extension and tenderness in the midline paraspinal muscles. (*Id.* at 544-47.) Plaintiff could walk normally and had good balance. (*Id.* at 547.)

On November 17, 2020, Plaintiff received a spinal injection from Dr. Lewis. (*Id.* at 537-38.) During a follow-up with Dr. Lewis on December 1, 2021, Plaintiff reported improvement in pain, particularly just after the procedure. (*Id.* at 520.) His pain during the appointment was reported at a five out of ten. (*Id.*) Plaintiff received another injection from Dr. Lewis on December 8, 2021. (*Id.* at 512.)

Plaintiff saw Dr. Ravishankar on January 17, 2022. (*Id.* at 463.) Dr. Ravishankar wrote Plaintiff was "doing well" and that his "back pain is better." (*Id.*) On January 23, 2022, Dr. Ravishankar completed an impairment questionnaire for Plaintiff. (*Id.* at 475.) Dr. Ravishankar identified back pain, hypertension, and COPD. (*Id.*) He opined Plaintiff could sit for one to two hours on average; occasionally lift and carry items less than five pounds; precluded from

reaching, handling, and fingering; and Plaintiff would likely miss one workday per month. (*Id.* at 476-78.)

Plaintiff saw Dr. Ravishankar again in May 2022, August 2022, November 2022, and March 2023. (*Id.* at 501, 499, 479, 495.) During these visits, notes indicate Plaintiff's health was similar, including that Plaintiff's physical examinations were normal and he could see to his hygiene and other daily chores. (*Id.*) The notes indicate Plaintiff was not seeing a pain doctor and no indication of back pain other than that Plaintiff had "chronic pain." (*Id.* at 495.)

In April 2023, Dr. Ravishankar filled out another impairment questionnaire. (*Id.* at 507.) On this questionnaire, Dr. Ravishankar opined Plaintiff could only sit or stand for less than one hour per workday and that his legs should be elevated for 50% of the workday. (*Id.* at 508-09.) Dr. Ravishankar wrote that Plaintiff would need to rest every fifteen minutes and could only occasionally lift items less than five pounds. (*Id.* at 509.) He stated Plaintiff would likely miss two to three workdays per month. (*Id.* at 510.)

The Administrative Law Judge ("ALJ") reviewed the evidence relating to Plaintiff's impairments and found no disability. (*Id.* at 71.) As relevant here, the ALJ weighed the relevant objective medical evidence, the record evidence, and the subjective testimony, and concluded Plaintiff's allegation that his pain was severe enough to be disabling conflicted with the record. Accordingly, the ALJ concluded Plaintiff was not disabled.

### B. Procedural History

On March 9, 2021, Plaintiff applied for Disability Insurance Benefits and Supplement Security Income, alleging an onset date of May 28, 2019 for social security income benefits and January 1, 2021 for disability insurance benefits. (Doc. 7 at 243, 259.) Plaintiff amended his alleged onset date to January 29, 2021. (*Id.* at 83.) On July 30, 2021, the Commissioner denied

the application (*id.* at 127) and denied the application on rehearing on February 18, 2022 (*id.* at 176). Plaintiff requested a hearing before and ALJ. (*Id.* at 180.) On May 3, 2023, the ALJ held a hearing. (*Id.* at 77-98.) During the hearing, Plaintiff was represented by counsel and the ALJ heard testimony from an impartial vocational expert. (*Id.*) On June 1, 2023, the ALJ issued a written decision finding Plaintiff was not disabled. (*Id.* at 102.) Plaintiff submitted a request to the Social Security Administration Appeals Council, which denied review on April 15, 2024. (*Id.* at 239.)

On April 30, 2024, Plaintiff commenced this action. On August 12, 2024, he filed his brief on the merits. (Doc. 8.) On August 27, 2024, Defendant filed a brief on the merits (Doc. 10) and on September 10, 2024 Plaintiff filed his reply (Doc. 11). On January 7, 2025, the Magistrate Judge issued her R&R recommending the Court affirm the Commissioner's final decision. (Doc. 12.) Plaintiff filed a timely objection. (Doc. 13.)

## II.     STANDARD OF REVIEW

A district court "shall make a *de novo* determination of those portions or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C) (flush language); *see Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, 1994 U.S. App. LEXIS 35044, *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to *de novo* review by the district court in light of specific objections filed by any party.") (citations omitted). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C) (flush language).

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The impairment must prevent the claimant from doing the claimant's previous work, as well as any other work which exists in significant numbers in the region where the individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A). In making a disability determination, an ALJ engages in a five-step sequential evaluation:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled. To be severe, the claimant must have a severe medically determinable physical or mental impairment, or a combination of impairments, that must have lasted or be expected to last for at least 12 months, unless it is expected to result in death.

3. If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment in Appendix 1 to Subpart P of Part 404, the claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work. If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 426 (6th Cir. 2018) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)).

During the first four steps, the claimant has the burden of proof. *Walters*, 127 F.3d at 529. The burden shifts to the Commission at step five. *Id.*

The Court's review of the Commissioner's decision to deny benefits is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.  42 U.S.C. § 405(g); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010).  "Substantial evidence is 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 521 (6th Cir. 2008) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal citation omitted)).  If substantial evidence supports the Commissioner's finding the claimant is not disabled, that finding must be affirmed even if the reviewing court would decide the matter differently.  *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citation omitted).

A reviewing court may not resolve conflicts in evidence or to decide questions of credibility.  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted).  The Commissioner's decision must be affirmed even if the claimant's position is also supported by substantial evidence.  *Wallace v. Comm'r of Soc. Sec.*, 221 F.3d 1337 (6th Cir. 2000) (unpublished table decision) (citing *Casey v. Sec'y of Health and Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)).

### III.  ANALYSIS

Plaintiff asserts only one objection to the R&R: the Court should decline to adopt the Magistrate Judge's conclusion that the ALJ complied with the regulations in his analysis of Plaintiff's subjective descriptions of his pain and limitations and that the ALJ's conclusions with respect to those descriptions is supported by substantial evidence.  (Doc. 13 at 621.)  Plaintiff argues the objective medical evidence supports Plaintiff's subjective assertions and that the ALJ

erred when he concluded the subjective complaints were inconsistent with the record. (*Id.* at 622.) In particular, Plaintiff objects to the ALJ's findings as it relates to Plaintiff's ability to stand and walk, which Plaintiff alleged he could not do for more than 15 minutes without pain. (*Id.* at 623.)

"Credibility determinations regarding the applicant's subjective complaints rest with the ALJ and are afforded great weight and deference as long as they are supported by substantial evidence." *Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 542 (6th Cir. 2014) (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003)). "In assessing an individual's credibility, the ALJ must first determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged." *Id.* (citing 20 C.F.R. §§ 404.1529(a), 416.929(a)). Then "the ALJ must evaluate the intensity, persistence, and functional limitations of the symptoms by considering objective medical evidence, as well as other factors found in 20 C.F.R. §§ 404.1529(c)(1)-(3) and 416.929(c)(1)-(3)." *Id.* A claimant's subjective complaints "can support a claim for disability . . . if there is also objective medical evidence of an underlying medical condition in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (citations omitted). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR No. 16-3P, 2017 WL 5180304, at *8. The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms . . . and be clearly articulated so the individual and any subsequent reviewer can

assess how the adjudicator evaluated the individual's symptoms."  SSR No. 16-3P, 2017 WL 5180304, at *10.

In this case, the ALJ concluded Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that "his statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (Doc. 7 at 62.)  Plaintiff argues in his objection the "ALJ never offered any proper basis for rejecting" Plaintiff's assertions about his ability to stand or walk for more than fifteen minutes.  (Doc. 13 at 622.)  Plaintiff cites to medical evidence in the record that supports Plaintiff's subjective assertions, such as imaging which showed multilevel degenerate disk disease with facet arthropathy and bilateral foraminal stenosis, Dr. Mahmood's finding of tenderness upon palpation of the bilateral paraspinal muscles of the lumbosacral junction, and Dr. Lewis' examination which showed tenderness at the midline paraspinal muscle.  (*Id.*)  To Plaintiff, the ALJ did not correctly interpret this evidence.  (*Id.*)  Plaintiff also asserts the ALJ improperly interpreted the evidence relating to Plaintiff's ability to stand and walk—Plaintiff asserts although the evidence shows he could stand and walk (*i.e.*, had normal gait), he could not do so for over 15 minutes without significant pain.  (*Id.* at 622-23.)

The ALJ summarized Plaintiff's written statements and hearing testimony regarding his pain.  (*Id.* at 61-62.)  The ALJ then detailed the relevant medical evidence.  (*Id.* at 63-65.)  Based on all the evidence, the ALJ found the record did support additional limitations, such as "a further reduction in the claimant's maximum abilities to climb ramps and stairs, to stoop and crouch, to kneel, to crawl, and even to balance any more than occasionally during an eight-hour workday."  (*Id.* at 64.)  But the ALJ also found "the claimant's alleged limitations in continuous sitting, standing, and walking abilities due to chronic back pain and radicular pain to the bilateral

posterior region remain unsupported by and overall inconsistent with many other aspects of the objective medical evidence and with other medical factors relating to treatments and his own statements made to his primary care doctor and to the specialists seen over August 2021-December 2021." (*Id.*)  The ALJ then discussed the relevant medical evidence and thoroughly explained his basis for his finding.  (*Id.* at 64-66.)  For instance, the ALJ explained:

> At the consultative examination and in April 2021 and July 2021 office visits with Dr. Ravishankar, Mr. Harding was consistently observed to ambulate with a normal and non-antalgic gait, to present in no distress, and to retain full ranges of motion in the four extremities.  Dr. Mahmood additionally observed that Mr. Harding was able to heel walk, toe walk, and stand and hop on each foot. Dr. Mahmood's musculoskeletal examination revealed normal inspection, 5/5 strength, and full ranges of motion of all major joints in the four extremities; no radicular symptoms down a lower extremity from the lumbar spine to include on digital palpation of the lumbosacral junction; no visible deformity of the dorsolumbar spine; full 5/5 paraspinal muscle strength in the thoracolumbar region of the back; normal range of motion throughout the dorsolumbar spine; and intact neurological findings in the lower extremities, including sensation to light touch and 2+/4 and symmetric deep tendon reflexes.

(*Id.* at 64.)  And the ALJ cited notes from Plaintiff's consultation with Dr. Lewis in October 2021 which "reflects that Mr. Harding denied any balance issues and any leg weakness, presented with no antalgic quality of gait, and showed good balance on his feet and did heel walking and toe walking normally." (*Id.* at 65.)  While Plaintiff's MRI in September 2021 did show "mild" to "minimal" degenerative changes, the ALJ found, "such objective laboratory diagnostic findings are not proportionate with the alleged intensity and extreme limiting effects of focal low back pain, or occasionally occurring radiation of pain into the buttocks, on sitting (only one-half hour continually), on standing (15 minutes only), and on walking (15-20 feet) abilities." (*Id.*)  The ALJ cited follow-up appointments in 2022 which described Plaintiff's condition as "good" and "doing ok," with specific notes stating that Plaintiff's "back pain is better" and that Plaintiff is "independently" doing all activities of daily living without any

complaints." (*Id.*)  Given this conflicting evidence, among others, the ALJ concluded Plaintiff's disorder does not "significantly limit his exertional abilities to sit, to stand, and to walk for continuous periods[.]" (*Id.* at 66.)

The ALJ accurately and extensively discussed the medical evidence and contrasted the evidence with Plaintiff's testimony.  The thorough examination of the record establishes the ALJ's decision was supported by substantial evidence.  *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) (finding that the "ALJ reasonably discounted [the plaintiff's] testimony concerning the severity of her pain because her testimony was inconsistent with the medical evidence in the record"); *Pifer v. Comm'r of Soc. Sec.*, No. 21-cv-314, 2022 WL 1521911, 2022 U.S. Dist. LEXIS 87263, at *30 (N.D. Ohio May 13, 2022) (explaining that the "ALJ gave a thorough explanation as to why he found [the plaintiff's] allegations inconsistent with her own activities and the medical evidence" which was sufficient substantial evidence supporting the ALJ's findings); *Bryson v. Comm'r of Soc. Sec.*, No. 20-cv-1137, 2021 WL 2735993, 2021 U.S. Dist. LEXIS 123070, at *46-47 (N.D. Ohio June 10, 2021) (finding that ALJ's decision was supported by substantial evidence where plaintiff's "complaints about pain limiting his ability to talk, stand, and use his arms/hands conflicted with" medical evidence supporting a finding plaintiff was not disabled).

While Plaintiff's objection identifies other evidence in the record that would tend to support his preferred conclusions, the ALJ applied the correct legal standard, considered all the evidence including the evidence Plaintiff cites to in his objection, and concluded the greater weight of the evidence supported an adverse finding.  The ALJ has stated "specific" and "clearly articulated" reasons for the weight given to Plaintiff's testimony and other medical evidence.  Because there was substantial evidence in the record to support the ALJ's decision, and because

this Court affords "great weight and deference" to the ALJ's credibility determinations, Plaintiff's objection is overruled.

## IV.     CONCLUSION

For the reasons stated above, Plaintiff Jeffrey Scott Harding's objection is OVERRULED, the R&R is ACCEPTED and ADOPTED, and the Commissioner of Social Security's final decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:  May 14, 2025

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE